# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC LEON MASERANG, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 18-cv-0672-BAS-NLS <br><br> **ORDER:** <br><br> **(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 16); AND** <br><br> **(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 19)** |

Plaintiff Eric Leon Maserang seeks judicial review of a final decision by the Acting Commissioner of Social Security denying his application for disability insurance benefits and supplemental security income under the Social Security Act ("the Act"). Presently before the Court are the parties' cross motions for summary judgment. The Court finds these motions suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 16 ("Pl.'s Mot.")) and **GRANTS** the Commissioner's Cross-Motion for Summary Judgment (ECF No. 19 ("Def.'s Mot.")).

//

## PROCEDURAL BACKGROUND

On December 23, 2013, Plaintiff filed an application for disability insurance benefits under Title II and Part A of Title XVIII of the Act, alleging disability since November 6, 2013. (Certified Administrative Record ("AR") 267-81, ECF No. 10.) On January 11, 2014, Plaintiff also filed an application for supplemental security income under Title XVI of the Act. (AR 286-89.) After his applications were denied initially and upon reconsideration, (AR 161-62, 191-92), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"), (AR 209-10). An administrative hearing was held July 18, 2016. (AR 74-111.) Plaintiff appeared at the hearing with counsel, and testimony was taken from him, a medical expert, and a vocational expert ("VE"). (*Id.*)

As reflected in his December 23, 2016, hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from his alleged onset date through March 31, 2016—the date last insured. (AR 23-36.) The ALJ's decision became the final decision of the Commissioner on February 5, 2018, when the Appeals Council denied Plaintiff's request for review. (AR 1-6.) This timely civil action followed.

## FACTUAL BACKGROUND

### I. Treatment Records

Plaintiff claims he suffers from depression and anxiety, chiari malformation, and severe pain caused by knee and spinal disorders. (AR 133-34, 270.) However, this order focuses on Plaintiff's knee and spinal issues.[1]

In late 2013, Plaintiff visited a neurological specialist named Dr. Aung for an evaluation of his neck and back pain. (AR 413.) Dr. Aung ordered an

---

[1] The ALJ determined that Plaintiff's mental impairments are nonsevere, and Plaintiff does not challenge this determination on appeal. In addition, Plaintiff's physicians concluded that he does not meet the criteria for chiari malformation. (AR 390, 419, 426.) Plaintiff does not argue otherwise in his Motion. (*See* Pl.'s Mot. 2:14-13:15.) Therefore, the Court does not expand on these items.

electromyogram ("EMG"), which showed "changes consistent with prior nerve root irritation in the left C7 and chronic nerve root irritation of [the] L5 and S1 level." (*Id.*) Dr. Aung noted "no evidence of acute denervating changes," and referred Plaintiff to neurosurgery for consultation regarding his lower back pain. (*Id.*)

In May 2014, Plaintiff visited an orthopedic surgery center for a consultation on his neck and back pain. (AR 477-79.) Physician Assistant Skropeta reviewed X-rays of Plaintiff's spine and recommended he also undergo magnetic resonance imaging ("MRI") of his spine. (AR 479.) During this consultation, Plaintiff described his pain as "severe with a rating of 10/10," and mentioned that his "symptoms are made worse with [a] home exercise program." (AR 477.)

In June 2014, Plaintiff returned to P.A. Skropeta after undergoing the recommended MRI. (AR 474.) P.A. Skropeta's physical examination of Plaintiff's spine revealed a normal cervical alignment, no evidence of tenderness, a normal range of motion, and no motor deficits. (AR 474-75.) Upon reviewing the MRI, P.A. Skropeta noted it revealed cervical spondylosis "most notable at C5-C6 and C6-C7 levels," "mild central stenosis at the C5-C6 and C6-C7 levels," "mild right CS-C6 foraminal stenosis," and "mild bilateral foraminal stenosis at the C6-C7 level."[2] (AR 475.) P.A. Skropeta diagnosed Plaintiff with cervical spondylosis, without myelopathy. (*Id.*) P.A. Skropeta recommended that Plaintiff undergo physical therapy to treat his cervical spondylosis. (*Id.*)

In treatment notes from a July 2014 follow-up appointment, P.A. Skropeta stated that although Plaintiff's MRI reveals he has a disc bulge "that is abutting [a] nerve root," Plaintiff's "MRI and subjective and physical exam findings do not match." (AR 970.) At a second follow-up appointment in September 2014, Plaintiff stated that recent physical therapy had not improved his neck pain. (AR 967.) P.A.

---

[2] MRI results from 2012 also showed minimal to mild disk bulging in Plaintiff's cervical spine. (AR 480.)

Skropeta therefore recommended Plaintiff undergo epidural steroid injections to manage his neck and back pain. (*Id.*)

Further, Dr. Alassil treated Plaintiff's mental and physical issues eight times from November 2013 through June 2015. (AR 390-95, 456-58, 466-68.) She noted the EMG and MRI findings described above when she referred Plaintiff to physical therapy and pain management for further treatment. (*Id.*) Dr. Sporrong, a primary care provider who practiced in the same clinic as Dr. Alassil, also treated Plaintiff beginning in October 2015. (AR 772.) In treatment notes from a January 2016 appointment, Dr. Sporrong indicated that he had previously consulted the clinic's behavioral health group about the possibility that Plaintiff was malingering or having somatic symptoms. (AR 764.) Then, in February and March 2016—several months before the administrative hearing—Plaintiff saw Dr. Sporrong for treatment of a groin injury. (AR 755, 758.) Plaintiff reported that working out and walking significant distances exacerbated pain caused by the groin injury. (AR 758.) Dr. Sporrong also noted that Plaintiff suffered a previous ankle injury, and that Plaintiff reported it "[h]urts to run and walk longer distances." (AR 755.)

Plaintiff also received specialty treatment for pain management from November 2014 through July 2015. He was given a trigger point injection to his coccyx in December 2014, and another to his lumbar spine in January 2015. (AR 726-28.) Plaintiff received a caudal epidural injection in April 2015, followed by a ganglion impar injection in July 2015. (AR 731-34, 739-41.) As the ALJ noted, Plaintiff had been treated by at least three pain management specialists and received at least ten injections by August 2015. (AR 776.)

In addition to outpatient care, Plaintiff sought emergency medical treatment for neck and back pain five times between October 2013 and September 2014.[3] (AR 614-618, 621-22, 625-28.) Physical examinations during each visit showed

---

[3] Hospital records also indicate he visited the emergency room for tooth pain in June 2014. (AR 619-20.)

unremarkable to minimal tenderness along his spine. (*Id.*) During two trips to the emergency room in September and October 2014, Plaintiff reported that his neck and back pain had worsened after helping his sister move and lifting heavy furniture. (AR 614, 617.)

## II. Medical Opinions

Aside from treatment notes, the record includes several opinions regarding the effects of Plaintiff's physical impairments. Initially, the state disability agency sent Plaintiff to Dr. Sabourin, a board-certified orthopedic surgeon, for an independent orthopedic consultation in March 2014. (AR 446-50.) The doctor interviewed Plaintiff, reviewed his records, and conducted a detailed physical examination of his spine and extremities. (*Id.*) Dr. Sabourin diagnosed Plaintiff with mild-to-moderate degenerative disk disease in his lumbar spine, minimal degenerative changes in his thoracic spine, minimal disk changes in his cervical spine, and "[i]nternal derangement of his bilateral knees, status post bilateral knee arthroscopies with residual mild varus deformities." (AR 450.) Dr. Sabourin believed that, while EMG results showed that Plaintiff's spinal problems had improved somewhat, he still suffers from "some significant limitations" due to the nature of his back and knee problems. (*Id.*) Dr. Sabourin opined that Plaintiff could: (1) lift twenty pounds occasionally and ten pounds frequently; (2) stand and walk up to six hours and sit for up to six hours of an eight-hour workday; and (3) climb, stoop, kneel, and crouch occasionally. (*Id.*) Dr. Sabourin did not believe Plaintiff had either manipulative limitations or a "need for assistive devices to ambulate."[4] (*Id.*)

After Dr. Sabourin's evaluation, two state agency disability consultants reviewed Plaintiff's claim in March and August 2014. (AR 142-44, 173-176.) They

---

[4] Plaintiff requested a prescription for a cane during a February 2016 visit to his primary care provider where he sought treatment for nausea and acid reflux. (AR 761.) He used the cane during the ALJ hearing in July 2016. (AR 82.)

completed residual functional capacity ("RFC") assessments and opined that Plaintiff is not disabled because he can still work despite his physical limitations. (*Id.*)

In September 2014, at Plaintiff's request, a physical medicine and rehabilitation specialist named Dr. Dulin completed an evaluation. (AR 515-18; *see also* AR 779-80.) Dr. Dulin stated that Plaintiff was limited to: (1) occasionally lifting twenty pounds and frequently lifting ten pounds; (2) standing or walking less than two hours in an eight-hour workday; and (3) sitting less than six hours in an eight-hour workday. (AR 515-18.) Dr. Dulin also concluded that Plaintiff's history of cervical stenosis and bilateral knee arthroscopy limited his ability to push and pull with his upper and lower extremities, prevented him from ever climbing ramps or stairs, and meant he could never kneel, crouch, or crawl. (*Id.*)

In October 2014, Dr. Alassil authored a brief letter in which she restates Plaintiff's conditions and notes, "his chronic pain is affecting his daily activities and quality of life." (AR 484.) Dr. Alassil's letter does not, however, further describe how Plaintiff's impairments may impact his ability to work.[5] (*Id.*)

Finally, in June 2016, Dr. Sporrong completed a medical source statement. (AR 980-82.) The doctor concluded that Plaintiff's chronic spine and knee pain rendered him incapable of working eight hours a day, five days a week on a sustained basis. (*Id.*) Dr. Sporrong opined that Plaintiff would need to take unscheduled five-to-ten-minute breaks every fifteen minutes during an eight-hour workday and would need to frequently change positions from sitting to standing or walking. (*Id.*) Notably, Dr. Sporrong stated that Plaintiff is not a malingerer. (*Id.*) Accordingly,

---

[5] Plaintiff mentions in his Motion that Dr. Alassil's examination notes from March 14, 2014, include reference to Plaintiff's apparent "significant limitations," and a statement that he is "able to lift and carry 20 pounds occasionally, 10 pounds frequently." (Pl.'s Mot. 4:1-13 (citing AR 457, 466).) However, those two statements were included in an addendum section of Dr. Alassil's notes (time stamped March 24, 2014), which restates the findings of a March 3, 2014, opinion by a third-party consultative examiner, Dr. Sabourin. (AR 457, 466; *see also* AR 450 ("I feel he does have some significant limitations").) The Court does not agree with Plaintiff's reading of Dr. Alassil's March 14, 2014, notes and declines to infer from the evidence that the referenced language constitutes Dr. Alassil's own qualitative determination of Plaintiff's physical limitations.

both Dr. Dulin and Dr. Sporrong opined that Plaintiff has more severe limitations than those expressed by the state agency consultants and the third-party evaluator, Dr. Sabourin. (*Compare* AR 515-18, *and* AR 981-82, *with* AR 142-44, 173-176, *and* AR 450.)

## LEGAL STANDARD

Under 42 U.S.C. § 405(g), an applicant for social security disability benefits may seek judicial review of a final decision of the Commissioner in federal district court. "As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court will uphold the Commissioner's disability determination "unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)).

"'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). When reviewing whether the Commissioner's determination is supported by substantial evidence, the court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks and citation omitted). However, the court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citation omitted).

**ADMINISTRATIVE DECISION**

**I.    Standard for Determining Disability**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act's implementing regulations, the Commissioner applies a five-step sequential evaluation process to determine whether an applicant for benefits qualifies as disabled. *See* 20 C.F.R. § 404.1520(a)(4). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. If not, the ALJ proceeds to step two.

At step two, the ALJ must determine whether the claimant has a severe medical impairment, or combination of impairments, that meets the duration requirement in the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant's impairment or combination of impairments is not severe, or does not meet the duration requirement, the claimant is not disabled. If the impairment is severe, the analysis proceeds to step three.

At step three, the ALJ must determine whether the severity of the claimant's impairment or combination of impairments meets or medically equals the severity of an impairment listed in the Act's implementing regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. If not, the analysis proceeds to step four.

At step four, the ALJ must determine whether the claimant's RFC—that is, the most he can do despite his physical and mental limitations—is sufficient for the claimant to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ

assesses the RFC based on all relevant evidence in the record. *Id.* § 416.945(a)(1), (a)(3). If the claimant can perform his past relevant work, he is not disabled. If not, the analysis proceeds to the fifth and final step.

At step five, the Commissioner bears the burden of proving that the claimant can perform other work that exists in significant numbers in the national economy, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1), (c)(2); *see also id.* § 404.1520(g)(1). The ALJ usually meets this burden through the testimony of a vocational expert, who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). If the claimant is able to perform other available work, he is not disabled. If the claimant cannot make an adjustment to other work, he is disabled. 20 C.F.R. § 404.1520(a)(4)(v).

## II. ALJ's Disability Determination

On December 23, 2016, the ALJ issued a written decision concluding that Plaintiff is not disabled within the meaning of the Act. (AR 23-36.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset of his alleged disability in November 2013. (AR 26.)

At step two, the ALJ found that Plaintiff's coccydynia and spinal disorders qualify as severe medically determinable impairments under 20 C.F.R §§ 404.1520(c) and 416.920(c). (AR 26.) In addition, the ALJ found Plaintiff's medically determinable mental impairments to be "depression" and "posttraumatic stress disorder," but determined those impairments do not cause "more than a minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (*Id.*) Plaintiff also has a history of cannabis and opioid abuse that the ALJ determined is well-controlled with ongoing treatment. (AR 27.) The ALJ did not consider Plaintiff's single psychiatric hospital admission to be

significant enough to support finding that Plaintiff has a medically determinable mental impairment. (*Id.*)

After determining that Plaintiff's severe impairments are limited to his physical ailments, the ALJ found at step three that Plaintiff's spine disorders and coccydynia do not meet or medically equal the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 29.)

Next, the ALJ assessed that Plaintiff has the RFC to perform "light work" as defined in the social security regulations.[6] (AR 29.) His opinion was based on consideration of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including opinion evidence. (*Id.*) He concluded that Plaintiff's spinal disorders and coccydynia "could reasonably be expected to cause [Plaintiff's] alleged symptoms," but found Plaintiff to be not fully credible, determining instead that his "statements concerning the intensity, persistence and limiting effects of [Plaintiff's pain] are not entirely consistent with the medical evidence and other evidence in the record." (AR 30.) In particular, the ALJ noted contradictions in Plaintiff's medical record that suggest Plaintiff has repeatedly engaged in strenuous physical activity even though he testified that his physical impairments limit him to performing at most minimal physical exertion. (*Id.*; *see also* AR 614, 617, 755, 758.)

The ALJ's RFC determination relied heavily on objective medical findings and Dr. Sabourin's evaluation. He noted the October 2013 EMG, which "showed nerve irritation on the left side of C7 and chronic nerve root irritation at L5-S1." (AR 31.)

---

[6] As defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a):
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as . . . [an] inability to sit for long periods of time.

In addition, the ALJ considered the X-rays ordered and reviewed by P.A. Skropeta in May 2014, which "showed reversal of cervical lordosis, and mild spondylosis present." (*Id.*) The ALJ also highlighted the MRI ordered and reviewed in June 2014, which revealed "cervical spondylosis at C5-6 and C6-7; mild central stenosis at the C5-6 and C6-7 levels; mild right C5-6 foraminal stenosis; and mild bilateral foraminal stenosis at the C6-7 levels." (*Id.*) Furthermore, the ALJ noted the clinical findings from numerous examinations by several of Plaintiff's examining and treating physicians. (AR 31-32.)

The ALJ assigned great weight to the March 2014 opinion of Dr. Sabourin, the third-party consultative examiner, because it was "based on a physical examination of [Plaintiff], and is consistent with the objective findings in the record." (AR 33.) However, the ALJ assigned little weight to the other opinions on Plaintiff's physical impairments. (AR 32-33.) Little weight was assigned to Dr. Dulin's September 2015 medical source statement because it was not supported by the objective medical evidence, including the imaging studies and physical examinations that revealed "little in the way of clinical findings." (AR 33.) Similarly, the ALJ assigned little weight to Dr. Sporrong's June 2016 medical source statement because it was based on Plaintiff's complaint of chronic pain and not supported by "objective medical evidence in the record." (*Id.*) Additionally, the ALJ assigned little weight to Dr. Alassil's October 2014 letter because "while it broadly states that [Plaintiff]'s pain affects his activities, it does not describe the degree to which his activities are affected."[7] (AR 32.)

Finally, the ALJ assigned partial weight to statements submitted by Plaintiff's mother, sister, and friend. As the ALJ noted, all three statements corroborated

---

[7] The ALJ also assigned little weight to the opinions of the state medical consultants. The consultative examiners opined that Plaintiff could perform "medium work," but the ALJ determined that a medium work rating is "not sufficiently restrictive" because it does not comport with the "objective findings, diagnoses, and subjective complaints." (AR 33-34.)

Plaintiff's subjective claims of pain. (AR 34.) The ALJ acknowledged that the three individuals were able to "observe [Plaintiff] on a day-to-day basis," but he again cautioned that "clinical studies have demonstrated only mild physical findings." (*Id.*)

At step four, the ALJ determined that Plaintiff could perform certain past relevant work as a "Recreation Facility Attendant" and a "Supervisor, Cashiers." (AR 34.) And for good measure, the ALJ had asked the VE if other work existed in the national economy for someone capable of performing only sedentary work— limited further by mental impairments to simple, repetitive tasks with no public contact and "only occasional interaction with coworkers and supervisors." (AR 109.) The VE testified that a person with those limitations would still be able to perform jobs such as a printed circuit board taper, a lens inserter, or a table worker. (*Id.*) Therefore, even if Plaintiff can perform only sedentary work, which would rule out his past relevant work, the ALJ concluded he is still not disabled because sufficient jobs exist in the national economy that Plaintiff could perform with his limitations.[8] (AR 35.)

## ANALYSIS

Plaintiff argues in his Motion that the ALJ improperly discounted Dr. Dulin's and Dr. Sporrong's medical source statements.[9] (Pl.'s Mot. 19:14-27.) He contends

---

[8] At the ALJ hearing, Plaintiff's counsel asked the VE if jobs existed in the national economy for an individual with the severe limitations Dr. Dulin and Dr. Sporrong described in their medical source statements. (AR 109-10.) The VE stated that an individual with those limitations would be unable to perform "structured work" such as would be required of a circuit board taper, lens inserter, or table worker. (AR 110.)

[9] Plaintiff also summarily objects to the ALJ's determination that Plaintiff's testimony was not credible. (Pl.'s Mot. 21:4-14.) A plaintiff may "fail[] to demonstrate error" where "[he] does not explain why the ALJ's finding is erroneous." *Williams v. Berryhill*, 728 Fed. App'x 709, 711 (9th Cir. 2018); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) (providing generally that the court "require[s] contentions to be accompanied by reasons"). The Court declines to consider Plaintiff's undeveloped claim regarding the ALJ's credibility determination.

that the ALJ's error was harmful, and that consequently the resulting RFC determination was not supported by substantial evidence.[10] (*Id.*)

Generally, courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." *Reddick*, 157 F.3d at 725. Further, the Ninth Circuit has explained:

> Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citations omitted). In addition, the "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

---

[10] Notably, as mentioned above, Plaintiff does not challenge the ALJ's determination at step two that his mental impairments were nonsevere, and the Court finds no reason to make Plaintiff's case for him. *See Indep. Towers*, 350 F.3d at 930. Moreover, the ALJ included his analysis of Plaintiff's mental impairments in his RFC determination and asked the VE to consider Plaintiff's alleged mental impairment symptoms at step five. (*See* AR 29, 34-35, 108-09.) Even if the ALJ improperly determined the medically-determinable mental impairments to be nonsevere, his error would be harmless because he adequately considered those factors in his analysis at steps three, four, and five. *Cf. Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that, where an ALJ might have erroneously deemed a medical impairment as nonsevere at step two, the error was harmless because the ALJ extensively discussed the medical impairment at later steps in the analysis); *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

## I. Dr. Sporrong

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for assigning little weight to Dr. Sporrong's opinion. (*See* Pl.'s Mot. 19:14-15, 19:21-22.) Dr. Sporrong's medical source statement conflicted with examining physician Dr. Sabourin's opinion. As Plaintiff suggests, the ALJ therefore could not assign little weight to Dr. Sporrong's opinion in favor of relying on Dr. Sabourin's opinion unless he proffered "specific and legitimate reasons supported by substantial evidence in the record" to do so. *See Orn*, 495 F.3d at 632. In fact, the ALJ tendered two reasons for assigning "little weight" to Dr. Sporrong's medical source statement. The Court must analyze whether either of the ALJ's rationales is a specific and legitimate reason supported by substantial evidence in the record. *See, e.g.*, *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011).

First, the ALJ found that Dr. Sporrong's medical source statement "is not supported by objective medical evidence in the record, which, despite [Plaintiff's] ongoing complaints of chronic pain, show little in the way of clinical findings." (AR 33.) The background summary, *supra*, details the relevant facts. To support his disability determination, the ALJ specified the clinical findings in the record, which consisted of several imaging reports, an EMG, and treatment notes from several sources that discuss primarily mild or unremarkable findings from physical examinations. (AR 29-32.) Dr. Sporrong's medical source statement claimed that the imaging was "objectively consistent with [Plaintiff's] pain," (AR 980); however, the ALJ noted that the clinical findings show only minimal to mild changes in Plaintiff's spine, which orthopedic and imaging specialists concluded signified "no evidence" of acute denervating changes, (AR 30-31).

The ALJ therefore met his burden to set out a detailed summary of the facts and conflicting evidence, state his interpretation thereof, and make findings. *See Orn*, 495 F.3d at 632; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir.

1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). And the record supports the ALJ's finding that Dr. Sporrong's restrictive opinion is inconsistent with the objective medical evidence, including physical examinations and imaging studies. (*See* AR 413, 474-75, 480-82, 614-18, 621-22, 625-28, 897-99, 901-04, 970.) Plaintiff highlights portions of the record to argue the ALJ needed to provide "further explanation of his assessment," (*see* Pl.'s Mot. 18:5-19:20, 19:21-23), but this argument is unconvincing. Plaintiff essentially disagrees with the ALJ's summary of the medical evidence and rational interpretation of the record. The Court, however, "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). Accordingly, the ALJ's first justification for rejecting Dr. Sporrong's medical source statement is a specific and legitimate reason that is supported by substantial evidence in the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (providing an ALJ may reject a physician's opinion when it is not consistent with the medical evidence).

The ALJ further rationalized that Dr. Sporrong's medical source statement conflicted with his own treatment notes. (*See* AR 33.) The ALJ highlighted that Dr. Sporrong "previously raised concerns . . . over possible malingering" because Plaintiff's complaints were not supported by objective findings. (*Id.*) This second rationale is a specific and legitimate reason for discounting Dr. Sporrong's opinion, but the Court finds it is not supported by substantial evidence in the record. A January 2016 treatment note from Dr. Sporrong that mentions malingering reads, "Followed by Heartland Center - received paperwork stating diagnosis: MOD, severe w/psychotic features, opioid dependence, MJ dependence, PTSD. I've actually discussed [Plaintiff] with behavioral here at FHCSD CH, and some concern of

malingering . . . or somatization?" (AR 764.) The ALJ inferred from this treatment note that Dr. Sporrong believed Plaintiff might have feigned his pain symptoms. However, a plain reading of the treatment note indicates that malingering was mentioned as conjecture without any indication as to who specifically raised the issue or which medical problem was being referenced. Plaintiff similarly argues that the note was unclear, positing instead that it "questioned the psychiatric symptoms, not the physical ones." (Pl.'s Mot. 20:20-21.) Furthermore, Dr. Sporrong subsequently checked a box in his June 2016 medical source statement that provides Plaintiff is not a malingerer. (AR 981.) Given that the single treatment note at issue is inconclusive and conflicts with the clear statement in Dr. Sporrong's subsequent medical source statement, the Court concludes this note does not rationally substantiate the ALJ's second ground for assigning "little weight" to Dr. Sporrong's medical source statement.

Though the Court rejects the ALJ's second reason, the ALJ did not err in assigning "little weight" to Dr. Sporrong's medical source statement because his first rationale is a specific and legitimate reason that is supported by substantial evidence in the record. *See Orn*, 495 F.3d at 632.

## II. Dr. Dulin

Plaintiff similarly contends that the ALJ improperly discounted Dr. Dulin's medical source statement. (Pl.'s Mot. 17-19.) Acting under the presumption that Dr. Dulin is a treating source, the ALJ reasoned that the doctor's medical source statement is contradicted by the objective medical evidence in the record as well as by the results of Dr. Sabourin's third-party evaluation. (AR 33.) Plaintiff asserts that Dr. Sabourin's opinion "could not adequately counter" Dr. Dulin's medical source statement because Dr. Dulin was a treating source. (Pl.'s Mot. 19:14-20); *see Reddick*, 157 F.3d at 725. As a preliminary matter, the Court disagrees with the

ALJ's designation of Dr. Dulin as a treating source. The Act's implementing regulations specifically define a treating source:

> Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s) . . . . We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 404.1527(a)(2).

Plaintiff visited his primary healthcare provider, Dr. Alassil, on June 25, 2015, "frustrated" that the clinic was "not helping him" mitigate his chronic pain. (AR 779.) He told Dr. Alassil that he "was not happy with [Dr. Sabourin's orthopedic opinion]," and requested that Dr. Alassil refer him to another consultative examiner for a "recheck." (*Id*.) According to Dr. Alassil's treatment notes, she obliged Plaintiff's request and referred him to Dr. Dulin to fill out a "functional capacity form." (AR 780.) At the hearing, the ALJ asked Plaintiff to elaborate on Dr. Dulin, to which Plaintiff replied, "He's a rehab specialist, a pain rehab and physical therapist." (AR 107.) When asked if he still sees Dr. Dulin, Plaintiff stated that "he left Heartland." (*Id*.) At one point during the hearing, while "trying to remember [Dr. Dulin's] name," Plaintiff stated that Dr. Dulin "did an evaluation on [Plaintiff's] knees." (AR 83.)

The record demonstrates that Plaintiff sought out Dr. Dulin for the sole purpose of filling out the medical source statement. Plaintiff was dissatisfied with Dr. Sabourin's opinion, which found Plaintiff's impairments not severely limiting, and in response, Plaintiff set out to "obtain a report in support of [his] claim for disability." *See* 20 C.F.R. § 404.1527(a)(2). Thus, Dr. Dulin was not a "treating

source" as defined by the regulations, but rather a "nontreating source" who Plaintiff was referred to by Dr. Alassil. *See id.*; *see also Thomas*, 278 F.3d at 958 (finding that a physician who was consulted for completion of a medical source statement was not a "treating source" even though the consulting physician was acting at the request of the claimant's treating physician).

However, even when an examining physician's opinion is contradicted by another doctor's opinion, "an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan*, 528 F.3d at 1198). Essentially, examining doctors' opinions are "still owed deference." *Id*. In assigning little weight to Dr. Dulin's opinion, the ALJ reasoned that Dr. Dulin's opinion was not supported by the objective medical evidence in the record, which showed "little in the way of clinical findings." (AR 33.) The ALJ also referred to his prior discussion of the physical examinations and imaging studies in the record, which revealed "mild objective findings." (*Id.*) Therefore, the ALJ pointed to the same objective medical evidence that he considered in his handling of Dr. Sporrong's medical source statement, which the Court has determined to be an appropriate basis for rejecting the treating physician's opinion. (*See* Dr. Sporrong, *supra*.) The Court finds this rationale similarly serves as a specific and legitimate reason that is supported by substantial evidence to assign "little weight" to Dr. Dulin's medical source statement. The ALJ thus did not err by discounting Dr. Dulin's opinion and assigning greater weight to Dr. Sabourin's evaluation. *See Garrison*, 759 F.3d at 1012.

## CONCLUSION

In light of the foregoing, the ALJ did not commit legal error because he provided specific and legitimate reasons supported by substantial evidence to discount the medical source opinions at issue. *See Orn*, 495 F.3d at 632. And the Court will not disturb the Commissioner's disability determination because it is supported by substantial evidence. *See Garrison*, 759 F.3d at 1009. Accordingly,

the Court **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 16) and **GRANTS** the Commissioner's Cross-Motion for Summary Judgment (ECF No. 19). It is hereby **ORDERED** that judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

    **IT IS SO ORDERED.**

**DATED: May 7, 2019**

Hon. Cynthia Bashant
United States District Judge